WILLIAM H. ARMSTRONG, Plaintiff and Appellee, v. F. E. JONES, Defendant and Appellant.

No. 5548. Argued June 8, 1932.—Decided March 20, 1933.

*Pellón & Ayuso* for appellant. *Leopoldo Feliú* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On March 14, 1928, this action was commenced through a complaint containing the following allegations:

"That prior to June 5, 1915, the defendant received from the plaintiff, as a loan, the sum of $1,300, without a term for its payment being fixed, said loan being evidenced by a private document which the defendant executed and delivered to the plaintiff, and signed the same before a notary public, said document literally copied being as follows:

" '$1,300.—By virtue hereof, I declare that I owe to Mr. W. H. Armstrong, a captain in the Army, the sum of ONE THOUSAND THREE HUNDRED DOLLARS, the proceeds of a loan which he made to me.—San Juan, P. R., this fifth day of June, one thousand nine hundred and fifteen.—(Signed) F. E. Jones—Affidavit No. 161—Subscribed to before me by Mr. F. E. Jones, whom I know.—(Date) supra.—(Signed) Damián Monserrat, Notary Public.—Internal revenue stamps.—Notarial Seal.'

"That the defendant has not paid, either in whole or in part, the said sum or any amount on account of the interest due thereon, even though he has been requested to do so by this plaintiff."

The defendant demurred to the complaint on the grounds that it failed to show upon its face that the plaintiff had capacity to sue, and that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer and allowed the defendant time to file an answer. Then the defendant filed a motion stating that he was not in a position to admit or to deny the authenticity of the document transcribed in the complaint, for which reason he prayed the court to order the plaintiff to allow him to inspect the document.

At this stage of the proceedings, the plaintiff asked leave to amend his complaint by inserting therein a second cause of action for the recovery of money lent to the defendant and received by the latter, and based his petition on the fact that when the plaintiff's attorneys became aware of the motion for inspection filed by the defendant, they obtained from

the defendant's attorneys, in order to get into communication with the plaintiff who resides in the United States, the time necessary to make an investigation into the whereabouts of the promissory note, and after the investigation was made the document could not be found "it having been mislaid, when the plaintiff was in good faith under the belief and conviction that the same was in the possession of an agent or attorney in fact that he had in Puerto Rico, prior to the institution of this suit."

The court heard both parties and permitted the filing of the amended complaint. The second cause of action was formulated thus:

"3. That about the month of June, 1915, the plaintiff delivered to the defendant, at the request of the latter, who received the same, the sum of $1,300 which the defendant promised to pay to the plaintiff, without a date being fixed for making such payment.

"4. That the defendant has not paid, either in whole or in part, the said sum or any amount whatever on account of the interest due thereon, even though he has been requested to do so by this plaintiff."

After a certain motion to strike out filed by the defendant had been overruled, the latter interposed demurrers on the grounds of insufficiency, misjoinder of causes of actions, and ambiguity. The demurrers having been overruled, the defendant insisted on his motion for inspection of the document. The plaintiff stated that he had only a copy in his possession, because the original had been mislaid, which copy he placed at the disposal of the defendant for his examination.

The incident having thus ended, the defendant answered as follows:

"Answering the first allegation of the first cause of action of the amended complaint, the defendant denies that he has had any loan or transaction with the plaintiff either on the date alleged in the amended complaint or on any other date; he denies that he has signed and delivered the document mentioned in the amended complaint or any other document on any occasion; and the de-

fendant further alleges that he requested the plaintiff to show him the original document transcribed in the first allegation of the amended complaint, but it had not been shown to him in spite of his repeated requests that it be shown to him.

"He denies the second averment of the first cause of action.

"In regard to the second cause of action, the defendant denies all the allegations set forth in said second cause of action of the amended complaint in this case.

"As a special defense, the defendant alleges that the causes of action exercised have prescribed in accordance with the provisions in sections 1862 *et seq.* of the Civil Code."

The case was tried on April 2, 1930. The plaintiff introduced in evidence the testimony of the witnesses William A. Hutton, Pedro del Manzano, Acsa E. Watson, and Damián Monserrat Simó, his own deposition, and documents. The defendant produced in evidence his own testimony and a document.

At the beginning of the trial, the defendant moved the court to order the plaintiff to elect between his two causes of action, and the plaintiff answered, "We elect to go to trial on the second cause of action—an action of debt—for money lent to the defendant and not paid by him."

The first witness to testify was Hutton, who stated that he knows the plaintiff who resided many years ago in Puerto Rico and left here about 14 or 15 years ago, and is now in Babylon, Long Island, New York.

The witness Del Manzano, acting clerk of the court, then followed. He identified an envelope which indicated that it contained the plaintiff's deposition; it had been received on October 9, 1929, and had remained in the custody of the clerk of the court, Vergné, and afterwards in that of the witness. He opened it and took out the deposition which was identified and described in detail in the record, and was delivered to the plaintiff's attorney who offered it in evidence.

In his deposition, the plaintiff said that he is now a landscape architect of the Park Commission of Long Island and was formerly a captain in the Regular Army of the United

States; that he resided in Puerto Rico for about fourteen years, and was in San Juan on June 5, 1915. He has known the defendant Jones since 1900. "Mr. F. E. Jones and I were co-owners in equal shares of a property situated in Toa Alta, Puerto Rico. About the month of September, 1908, Jones and I agreed to end our partnership, and when the liquidation was made, he owed me $1,500, for which he gave me a mortgage on the property . . . . . about December 22, 1911, when I was living at the Military Headquarters in San Juan, Jones came to me and proposed that I cancel that mortgage so that he might carry out a deal that he had pending for a loan; I accepted on the condition that he give me written evidence of his debt to me. From September, 1908, to December, 1911, he had paid no interest. On December 22, 1911, he paid $500 that was due as interest. I cancelled the mortgage and waited until June 5, 1915, before I could get him to acknowledge his debt to me. Although no subsequent payments of interest—it appears here in handwriting and with the initials W. W. W. 9 per cent—were made, and although no part of the principal was ever paid, I reduced the bill, the real account, the true account, which had then matured on June 5, 1915, to $1,300 in order to get him to go with me to the office of Damián Monserrat and sign an acknowledgment of his debt to me. I succeeded in having Mr. Jones sign the document transcribed in the complaint, evidencing his debt to me. No term was fixed for its maturity then in said document, but it was understood that he would pay the same on demand, at sight . . . . Said paper or document was signed on June 5, 1915, before Notary Public Damián Monserrat, of San Juan, Puerto Rico, by Mr. F. E. Jones, the defendant."

A document, marked "No. 1" and attached to the deposition, was handed to the deponent, who said: " . . . it is a true and faithful manuscript copy of the original document executed by Mr. Jones in my favor before Notary Public Damián Monserrat, of San Juan, Puerto Rico, already mentioned . . . . . . The original document was sent about June

19, 1915, to Frank P. McCurdy, now deceased, then Assistant Auditor of Puerto Rico, with a letter requesting his assistance in collecting the account from Jones. Before sending the original, I made a copy in my own handwriting. That is the paper marked 'Identification No. 1.' Mr. McCurdy was a very close friend to whom I entrusted all my business affairs in Puerto Rico. He knew all about the account that Jones owed to me. The document has not been found since Mr. McCurdy's death.

The document left his possession for the first time "on or about June 19, 1915, when I wrote to F. P. McCurdy, of San Juan, Puerto Rico, and inclosed the same in a letter I wrote in Washington, D. C."

When it was not found, "I wrote to my representative, W. A. Hutton, of San Juan, Puerto Rico to see the members of the McCurdy family and make an effort to find it."

To the question, "Who wrote the document Identification No. 1?" he answered: "I, William Henry Armstrong . . . . The words are exactly the same; a true and faithful copy. The original was sealed with the notarial seal of Notary Public Damián Monserrat, in San Juan, Puerto Rico . . . . . Mr. Jones rarely answered the letters that I wrote to him . . . . . My registry-book of letters shows that I wrote to him on the following dates in regard to his debt to me; May 13, 1913, unanswered; August 26, 1913, unanswered; February 5, 1914, unanswered; May 29, 1914, unanswered; August 3, 1914, unanswered; October 10, 1914, registered, unanswered; April 28, 1915, unanswered; May 4, 1915, unanswered; December 7, 1916, unanswered; February 21, 1917, unanswered; March 25, 1917, he answered that he had no money; September 8, 1918, which he did not answer; and November 4, 1918, which he did not answer . . . . Not only have I written him kind letters but I have also offered to relieve him from the payment of the interest if he would pay me the principal. I have offered to compromise on the basis of monthly pay-

ments or in any other manner convenient for him. He has never given me any reply."

Neither the defendant nor any person in his name has paid the debt either wholly or partially.

The deposition was finally admitted in evidence with all the objections that the defendant made while it was being read and which appear from the record, only one of which—that relating to the contents of the defendant's answer to one of the letters that the plaintiff said that he had written to him—was sustained.

William A. Hutton, was commissioned by the plaintiff to entrust the matter to an attorney and to search for the document to which the complaint refers. His efforts to that end with the heirs of McCurdy were fruitless.

Miss Watson has lived in Puerto Rico for 25 years and is the sister of the wife of Mr. McCurdy, who died in 1924. Before his death, all the McCurdy affairs "were discussed in the family, and after his death I was his executrix .... I have searched for that document because I knew of its existence while Mr. McCurdy was alive ..... I have not been able to find it since his death."

The document marked "Identification No. 1" was read to her and she stated, "That was the document the original of which I was looking for." Cross-examined by the defendant's attorney who asked her to compare the document transcribed in the complaint with that which appears in the copy offered as evidence, she finally answered, "I do not see much difference between them with the exception of the rate of interest, but I may say that I do not remember about that. I know that Mr. McCurdy received the document."

Immediately the following stipulation was entered in the record:

"Plaintiff: Your Honor, by stipulation of the parties it is agreed that if the notary, Damián Monserrat, were present in court with his register of affidavits for the year 1915, it would appear from said book, and said witness would declare, that at folio 27 of the

register of affidavits in his notarial office, for the year 1915, the following entry appears: 'No. 161—June 5—F. E. Jones signs and swears to a document of indebtedness to W. H. Armstrong for the sum of One Thousand Three Hundred Dollars lent to him.'

"Defendant: We admit that he would so declare: that there appears an entry by a certain F. E. Jones."

Then the following incident occurred:

"Plaintiff: And now, Your Honor, as corroborative evidence of the making of the loan, and having established that the original of the document marked 'Identification No. 1' has been mislaid and can not be found, we offer this document 'Identification No. 1' as evidence in the case.

"Defendant: We object for the reason that the original is the best evidence, and also because the signature of the person who signed that document has not been duly identified. F. E. Jones may be Frank E. Jones, Fredrick E. Jones, but it has not yet been proved that that is the signature of the defendant.

"Judge: The Court admits it for the purpose of taking it into account in connection with the deposition of the plaintiff. It will be marked 'Plaintiff's Exhibit No. 4.'

"Defendant: We take an exception for the same reasons as those justifying the objection.

"Plaintiff: That is our case."

The trial of the case was resumed on May 1, 1930. The defendant began his evidence with his own testimony. He knew the plaintiff in Puerto Rico. He had business dealings with him. He paid him everything he owed him. He bought his interest in a property that they owned jointly. He paid him in cash. He owed him $1,500 and paid it to him. In regard to where he caused the payment to be noted, he answered "It is very difficult to remember because it was so many years ago, but I know that it is the document in which he cancelled the mortgage."

The document was offered in evidence and was admitted with the objection of the plaintiff.

The direct examination continued as follows:

"Q. Mr. Jones, have you ever seen the original of the document that appears marked 'Plaintiff's Exhibit 4'?—A. When this prop-

erty was originally bought, Armstrong paid the money because he knew that there was a buyer who would pay more money for it, which was good business for him, and afterwards we decided to keep the property and not sell it. I was paying Armstrong my share until I liquidated it. Armstrong would not have been in the business if it had not been a matter of there being something in it for him, because he is a business man. I paid him the original amount first, and afterwards I paid him my share.—Q. But my question is, did you sign a document of which plaintiff's exhibit 4 is a copy, on July or June 5, 1915?—A. I do not remember such a transaction.—Q. Did Mr. Armstrong ever write to you, trying to collect from you?—A. I do not remember having received any letter from Mr. Armstrong since he left Puerto Rico many years ago.—Q. Did any other person in Mr. Armstrong's name try to collect any money from you?—A. Absolutely no one except these two persons.—Q. To whom do you refer?—A. To Mr. and Mrs. Hutton. . . . . .— Q. Then the first time that you had notice that they were trying to collect the alleged debt was when you were summoned by the Court?—A. Yes, sir.—Q. Did you know Mr. McCurdy, Frank Mc Curdy?—A. Yes, I knew him.—Q. Did he try to collect the alleged debt from you?—A. No, never.—Q. Then you can affirm that you did not sign the document 'Plaintiff's Exhibit 4'?—A. I do not remember such document; I do not remember having signed such document, and if that document exists, it could be presented to me to see if it is true. I do not remember having signed it.— Defendant: That is all with the witness.''

The cross-examination fills many pages of the transcript and is difficult to summarize. We shall refer to the most important questions. When the certificate of the notary, Mr. Monserrat, was presented to him he answered: ''I do not remember such transaction; I do not remember that document; I do not remember having such document . . . . . . —Q. Mr. Jones, once more. If I show you Plaintiff's Exhibit 3, which I ask you to read, and call your attention especially to the entry that appears here in the register of affidavits of Notary Damián Monserrat, can you tell the Court whether said entry and that to which it relates are true, or are they false? Answer the question.—A. I do not know any-

thing about that document. If you have the document, why do you not present it?"

At the close of defendant's evidence and with his testimony and the presentation of the deed of cancellation of the mortgage as his evidence, the plaintiff offered the testimony of the notary public, Mr. Monserrat.

The plaintiff's attorney asked:

"But upon being shown 'Plaintiff's Exhibit 3,' can you state whether this gentleman who is seated here—the attorney pointing out the witness who has just testified, F. E. Jones—whether this gentleman who is seated here is the same one who signed the document which is mentioned in the entry that you transcribed in that exhibit?—Witness: Yes, sir; yes.—Attorney: Is he the same?—Witness: The same."

And the defendant's attorney asked:

"One question. Do you remember the document they signed before you?—Witness: A document . . . . . What it says in the affidavit.—Attorney: But the document in itself, the contents of the document.—Witness: Yes; acknowledging a debt of $1,300. What it says here.—Attorney: Could it be another person, another F. E. Jones, who may have gone there to sign that document?—Witness: I have known him many years.—Attorney: But you believe that it was he?—Witness: Yes, Sir."

The judgment of the court was as follows:

". . . . . renders judgment for the plaintiff on the second cause of action and adjudges the defendant, Franklyn Elmer Jones, to pay to the plaintiff, William Henry Armstrong, the sum of $1,300 as principal, fixing the term of sixty days for the payment of said sum, counted from the day on which the judgment becomes final, with interest on said sum at six per cent per annum from the expiration of the term until the full payment of the debt, with costs."

In its statement of the case and opinion, the court analyzed the evidence, adjusted the conflict therein in favor of the plaintiff, and added:

"The document fixes no term for payment. The court will fix it, and it shall be sixty days counted from that on which the judgment becomes final. *Nicorelli* v. *López & Co.*, 26 P.R.R. 49; *Seoane*

v. *Cortés,* 40 P.R.R. 69. The payment of interest was not agreed upon in the document, nor has it been proved that it was agreed upon. The fact that legal interest was paid prior to the document is no ground for granting it in this case. If there was an agreement, it should have been included in the ·document. There is no right to claim and collect interest in the absence of an express contract in regard thereto. *Central Pasto Viejo* v. *Aponte,* 34 P.R.R. 849.

"And if the obligation does not establish a term for the payment, neither should the legal interest of six per cent per annum be charged from the date of the document, June 5, 1915, nor from the filing of the complaint, but from the date on which the defendant should pay the debt, at the expiration of the term fixed for its payment.

"In regard to prescription, the defendant has not specified the section on which the claim is based. It is a case of personal action, without a special term fixed by law, which prescribes in fifteen years. Sec. 1865, Civil Code. The instrument acknowledging the debt was signed and delivered on June 5, 1915, and as the original complaint seeking the recovery was brought on March 14, 1928, said term of fifteen years had not expired."

In our opinion, the judgment of the court should be affirmed. Eleven are the errors assigned by the defendant-appellant in his brief. The first assignment refers to the admission of the amended complaint. It is very clear that "amendments to the complaint which may materially change the cause of action or set up one essentially distinct or comprise a matter wholly foreign to the original complaint, are not allowable" (*González* v. *González,* 43 P.R.R.———*; *Martí* v. *Am. R. R. Co.,* 28 P.R.R. 689). However, here it is not a matter of two distinct causes of action, but of the same cause of action set forth in a different way; and if any ambiguity might have been noted, it disappeared completely when, at the beginning of the trial, the party appellant elected to prosecute it under only one of the two causes of action alleged in his complaint.

By the second assignment it is maintained that the admis-

---

* Note: See Preface of this volume.

sion of the copy of the document signed by the defendant, acknowledging his debt to the plaintiff, constitutes a prejudicial error justifying a reversal of the judgment.

We do not agree. The copy was introduced as corroborative evidence of the making of the loan, after the presentation of a full and detailed deposition of the plaintiff, the testimony of Mr. Hutton and of Miss Watson, and the stipulation in regard to the entry in the register of the notary, Mr. Monserrat; evidence that as a whole tended to show the real and effective existence of the transaction, and of the original document, the loss of the latter, and the substantial identity of the copy with the original. The only difference noted, the payment of interest, was settled by the court in favor of the defendant-appellant. Section 24 of the Law of Evidence, Comp. Stat. 1911, p. 278. *Burgos* v. *Báez,* 17 P.R.R. 599, and *Central Pasto Viejo* v. *Aponte,* 34 P.R.R. 849.

The third assignment relates to the credibility of the witness, Miss Watson. In our opinion it is not well founded. We have read and examined the testimony carefully and we do not believe it can be deduced from its own terms, from the manner in which the witness conducted herself and testified, that her testimony does not deserve credence. The hesitation that can be noted is a natural one that is explained by the years that have passed and the frailty of human memory, especially in regard to details. No hesitation whatever is observed in regard to the existence of the document and its essential significance.

All the assignments from the fourth to the ninth refer to errors alleged to have been committed in allowing answers contained in the plaintiff's deposition and the deposition itself with such defects to remain in the record. These assignments are argued jointly in the brief, the appellant practically limiting himself to reproducing the statements of the stenographic record.

The taking of the deposition in itself is not challenged. It was indeed a proceeding which fulfilled all the requirements

that the law fixes for such cases. Complaint is made that the plaintiff was permitted to testify as to the nature of the transaction, as to the contents of a document that was not in evidence, as to what happened to the original document, as to the manner of comparing the copy with the original, and as to the letters that the plaintiff wrote to the defendants; and also in respect to the admission of the deposition generally in spite of the foregoing objections.

As the action is based on the transaction made and not on the document, it was logical that the plaintiff should testify in regard to its nature and antecedents.

The witness gave his deposition for subsequent use at the trial, where it might or might not be admitted. It was correct to allow him to testify in regard to a document which had not been presented or even admitted in evidence, but which was shown to him and identified in due form.

It was natural also that the witness should be questioned and allowed to testify in regard to what happened to the original of said document, since it was necessary to establish that fact as a foundation for the application of the exception authorizing the introduction of the copy instead of the original, as provided by the rule.

And the relevancy of the answer in regard to the manner of comparing the copy with the original is a consequence of what we have just decided.

In regard to the letters and the sending thereof, the same person who wrote and sent them testified. They were addressed to the defendant himself and should be in his possession. He could admit or deny, as he subsequently denied, having received them, and it was incumbent on the court to adjust the conflict between the two testimonies. When the plaintiff went farther than he could in referring to the contents of an answer that he said he received from the defendant, and the latter objected, the court, as we have already stated, sustained the objection.

As the assignments, from the fourth to the eighth are not well founded, the ninth must also fall.

The tenth assignment is formulated thus: "Prejudicial error was committed by the court in holding that the plaintiff had proved his case based on the second cause of action alleged in the amended complaint, and consequently, in sustaining, as it did sustain, the amended complaint as to the second cause of action."

In our opinion, the error is nonexistent. The loan, the delivery, and the receipt of the money were shown by the testimony of the plaintiff; the entry in the notarial register, the copy of the document executed by the defendant himself, acknowledging his debt, and that the same was not paid, were established by the evidence of the plaintiff.

In the face of that evidence, the defendant only introduced the deed of 1912 and his own testimony which, in truth, could not be more evasive.

The deed was explained by the plaintiff's evidence. It was agreed to release the property provided that the defendant would acknowledge his debt, which was fixed at $1,300. The plaintiff performed his part. The defendant waited more than two years before he began to perform his part, by executing the notarial instrument a copy of which was introduced in evidence.

This assignment involves the weighing of the evidence, and we have already said that the conflict was adjusted by the trial court in favor of the plaintiff, and now we add, without any error having been shown, and still less, passion, prejudice, or partiality.

The last assignment refers to the costs. The conflict in the evidence having been decided against the defendant, the imposition of costs is entirely justified.

The judgment appealed from must be affirmed.